# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **Case No.: 24-CR-358 (TJK)** |
| | : | |
| **v.** | : | **18 U.S.C. § 111(a)(1)** |
| | : | **(Assaulting, Resisting, or Impeding** |
| **CLAY NORRIS,** | : | **Certain Officers)** |
| | : | |
| **Defendant.** | : | |

## STATEMENT OF OFFENSE

Pursuant to Fed. R. Crim. P. 11, the United States of America, by and through its attorney, the United States Attorney for the District of Columbia, and the defendant, Clay Norris, with the concurrence of the defendant's attorney, agree and stipulate to the below factual basis for the defendant's guilty plea—that is, if this case were to proceed to trial, the parties stipulate that the United States could prove the below facts beyond a reasonable doubt:

### *The Attack at the U.S. Capitol on January 6, 2021*

1.      The U.S. Capitol, which is located at First Street, SE, in Washington, D.C., is secured twenty-four hours a day by U.S. Capitol Police (USCP). Restrictions around the Capitol include permanent and temporary security barriers and posts manned by USCP. Only authorized people with appropriate identification are allowed access inside the Capitol.

2.      On January 6, 2021, the exterior plaza of the Capitol was closed to members of the public.  The grounds around the Capitol were posted and cordoned off, and the entire area as well as the Capitol building itself were restricted as that term is used in Title 18, United States Code, Section 1752 due to the fact that the Vice President and the immediate family of the Vice President, among others, would be visiting the Capitol complex that day.

3.      On January 6, 2021, a joint session of the United States Congress convened at the Capitol. During the joint session, elected members of the United States House of Representatives and the United States Senate were meeting in separate chambers of the Capitol to certify the vote count of the Electoral College of the 2020 Presidential Election, which had taken place on Tuesday, November 3, 2020. The joint session began at approximately 1:00 PM. Shortly thereafter, by approximately 1:30 PM, the House and Senate adjourned to separate chambers to resolve a particular objection. Vice President Mike Pence was present and presiding, first in the joint session, and then in the Senate chamber.

4.      As the proceedings continued in both the House and the Senate, and with Vice President Pence present and presiding over the Senate, a large crowd gathered outside the Capitol. Temporary and permanent barricades, as noted above, were in place around the exterior of the Capitol, and USCP officers were present and attempting to keep the crowd away from the Capitol and the proceedings underway inside. By shortly after 1:00 PM, the situation at the Capitol had become a civil disorder as that term is used in Title 18, United States Code, Section 231, and throughout the rest of the afternoon the civil disorder obstructed the Secret Service's ability to perform the federally protected function of protecting Vice President Pence.

5.      At approximately 2:00 PM, certain individuals in the crowd forced their way through, up, and over the barricades. Officers of the USCP were forced to retreat and the crowd advanced to the exterior façade of the building. Officers with the D.C. Metropolitan Police Department were called to assist officers of the USCP who were then engaged in the performance of their official duties. The crowd was not lawfully authorized to enter or remain in the building and, prior to entering the building, no members of the crowd submitted to security screenings or weapons checks as required by USCP officers or other authorized security officials.

6.     At such time, the certification proceedings were still underway, and the exterior doors and windows of the Capitol were locked or otherwise secured. Members of the USCP attempted to maintain order and keep the crowd from entering the Capitol; however, shortly after 2:00 PM, individuals in the crowd forced entry into the Capitol, including by breaking windows and by assaulting members of law enforcement, as others in the crowd encouraged and assisted those acts. The riot resulted in substantial damage to the Capitol, requiring the expenditure of more than $2.9 million dollars for repairs.

7.     Shortly thereafter, at approximately 2:20 PM, members of the House of Representatives and of the Senate, including the President of the Senate, Vice President Pence, were instructed to—and did—evacuate the chambers. Accordingly, all proceedings of the United States Congress, including the joint session, were effectively suspended until shortly after 8:00 PM on January 6, 2021. In light of the dangerous circumstances caused by the unlawful entry to the Capitol—including the danger posed by individuals who had entered the Capitol without any security screening or weapons check—Congressional proceedings could not resume until after every unauthorized occupant had been removed from or left the Capitol, and USCP confirmed that the building was secured. The proceedings resumed at approximately 8:00 PM after the building had been secured. Vice President Pence remained in the Capitol from the time he was evacuated from the Senate Chamber until the session resumed.

### *The Defendant's Participation in the January 6, 2021, Capitol Riot*

8.     On or about January 6, 2021, Norris travelled via bus from Ohio to Washington, D.C. Norris brought a megaphone from home with him to Washington D.C.

9.     Norris knew that violence was likely to break out in Washington D.C. on January 6, 2021. Among other things, Norris messaged others on social media, "I'm ready to lay it down

in jail in D.C. on the 6th. TRUMP basically saying get wild for are [sic] COUNTRY and freedom's", "Heading to D.C on January 6th and I'll be ready for war if need be," "the 6th might be the start of a civil war if they cheat are [sic] president," and "We just lost the Senate from them cheating us again. Pence don't stand up today I'm begging for a Riot!!"

10. After Norris arrived in Washington, D.C., he went to the East Side of the U.S. Capitol.

11. From at least approximately 12:45 PM to 1:45 PM Norris walked behind the barricades that marked the restricted perimeter, chanted, and yelled at officers through his megaphone. Norris said, among other things, "We get bad news, let us drain that swamp. All we ask is you walk away. Let us bring it. Let us bring it," and "You guys got all kinds of crooks in there you ain't arresting right now. Arrest the crooks inside."

12. At approximately 1:45 PM, Norris pushed fencing that formed the barricade against U.S. Capitol Police Officers, who were attempting to prevent rioters from advancing towards the U.S. Capitol building.

13. Norris was able to briefly breach the barricades after the push, but officers were able to reestablish the police line and marshal rioters like Norris who had broken through back behind the barricades.

14. Once back behind the barricades Norris said to officers "We don't want you guys. We want them," referring to the elected officials. He also encouraged others to make a stand, "Make a stand. Make a stand, while there is still time to make a stand . . . How long are you going to be peaceful and selfish? Think about the kids and future children. Make a stand. Make a stand for your country."

15.    At approximately 2:00 PM rioters successfully breached the barricades. Norris along with others entered the restricted area and moved toward the Capitol building.

16.    Norris reached the East Central Stairs of the Capitol building where another police line had formed to protect the building. Norris was directly in front of the police line, and he continued to yell at officers through a megaphone. Among other things, Norris motioned with his left hand toward the Capitol building and told police officers, "Send those motherfuckers out to talk to us," referring to elected officials in the Capitol.

17.    The police line on the East Central Stairs was forced to retreat and Norris and other rioters advanced to the terrace of the building. Norris, along with other rioters, surrounded police officers near the Rotunda Door and continued to rush towards the building. Norris yelled to other rioters to, "Push forward!"

18.    While on the terrace of the Capitol building, Norris reached out his hand and directly pushed into a U.S. Capitol Police Officer's shield.

19.    Norris continued to move toward the door of the building. As Norris and others were trying to get into the building, U.S. Capitol Police Officers deployed a chemical irritant. Then, Norris finally retreated.

### *Elements of the Offense*

20.    The parties agree that Assaulting, Resisting, or Impeding Officers in violation of 18 U.S.C. § 111(a)(1) (Count Two) requires the following elements:

    a.  First, the defendant assaulted, resisted, opposed, impeded, intimidated, or interfered with an officer from the U.S. Capitol Police;

    b.  Second, the defendant did such acts forcibly;

    c.  Third, the defendant did such acts voluntarily and intentionally;

    d.  Fourth, the person assaulted, resisted, opposed, impeded, intimidated, or interfered with was an officer or an employee of the United States who was then engaged in the performance of his/her official duties; and

    e.  Fifth, the defendant made physical contact with that officer or acted with the intent to commit another felony. For purposes of this element, "another felony" refers to the violation of 18 U.S.C. § 231(a)(3) charged in Count One.

### *Defendant's Acknowledgments*

21.    The defendant knowingly and voluntarily admits to all the elements as set forth above. Specifically, the defendant admits that he forcibly, voluntarily, and intentionally assaulted, resisted, opposed, impeded, intimidated, or interfered with an officer of the U.S. Capitol Police near the Rotunda Doors of the U.S. Capitol building, and that, at the time, the officer was engaged in the lawful performance of his/her official duties and was an officer of the United States who was then engaged in the performance of his/her official duties. The defendant further admits that he made physical contact with the officer and acted with the intent to commit another felony, specifically, an act of civil disorder, as charged in Count One of the indictment in this case.

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney
D.C. Bar No. 481052

By:    *s/ Kathryn E. Bolas*
Kathryn E. Bolas
Assistant U.S. Attorney
NY Bar No. 5704234
Capitol Siege Section
U.S. Attorney's Office
District of Columbia
(202) 252-0872
Kathryn.Bolas@usdoj.gov

**DEFENDANT'S ACKNOWLEDGMENT**

I, Clay Norris, have read this Statement of the Offense and have discussed it with my attorney. I fully understand this Statement of the Offense. I agree and acknowledge by my signature that this Statement of the Offense is true and accurate. I do this voluntarily and of my own free will. No threats have been made to me nor am I under the influence of anything that could impede my ability to understand this Statement of the Offense fully.

Date: 11-14-24

_____
Clay Norris
Defendant

**ATTORNEY'S ACKNOWLEDGMENT**

I have read this Statement of the Offense and have reviewed it with my client fully. I concur in my client's desire to adopt this Statement of the Offense as true and accurate.

Date: 11/14/2024

_____
Alvaro DeCola
Attorney for Defendant